THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

FILED
FEB 27 2015
Clerk, U.S. District Court
District Of Montana
Missoula

| CODY WILLIAM MARBLE, | CV 13-00186-M-DWM-JCL |
|---|---|
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| JARED POOLE and HEATHER SMITH, | |
| Defendants. | |

This matter is before the Court on Defendants' Motions for Summary Judgment. (Docs. 23, 26.) For the reasons stated, the Court recommends the motions be granted and this action be dismissed.

I. BACKGROUND[1]

Defendant Jared Poole is a probation and parole officer for the Montana Department of Corrections and Defendant Heather Smith is a probation and parole supervisor for the Montana Department of Corrections.

---

[1]Consistent with summary judgment standards discussed below, the following facts are taken from the materials of record. The Court views the facts and inferences from them in the light most favorable to Marble as the non-moving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 474 U.S. 574, 587-88 (1986).

1

Plaintiff Cody Marble is a former prisoner who was on parole in Missoula, Montana under the supervision of Defendant Poole beginning July 1, 2011. On September 8, 2011, Marble was involved in an incident in which a woman, Leann Dontigny, accused him of assaulting her. Marble denied the allegations but was arrested on a parole violation as a result of the incident. He was ultimately charged with misdemeanor assault and misdemeanor possession of marijuana which was found in his vehicle after the incident.

On September 14, 2011, Poole filed a report of parole violations alleging Marble violated his parole by assaulting Ms. Dontigny, possessing 30 grams of marijuana, failing to cooperate with a parole officer, and being off-schedule. Marble was served with Notices of an On-Site Hearing on September 14, 2011 and September 16, 2011 and filled out Requests for Witnesses asking that Jerry Marble, Blaine Marble, Brittany Wells (percipient witness to the underlying incident), Jared Poole, and Leann Dontigny be made available as witnesses. Prior to the hearing, Defendant Heather Smith attempted to contact Marble's witnesses. Although she spoke with Blaine Marble, there is no evidence that she advised him of the date and time of the on-site hearing. She was not able to reach Jerry Marble or Leann Dontigny and she made no attempt to contact Brittany Wells.

An on-site hearing was conducted on September 22, 2011. Smith presided

as the hearing officer and Defendant Poole appeared as a witness. Smith found probable cause existed for three of the four alleged violations of the conditions of Marble's parole. Smith prepared a "Summary of On-Site Hearing," detailing Marble's position and responses to the alleged violations, the documents and evidence in support of the violations, and her probable cause determination on each alleged violation. On September 28, 2011, Marble was transferred from the Missoula County Detention Center to Montana State Prison to await a revocation hearing before the Montana Board of Pardons and Parole.

Marble then utilized the Department of Corrections grievance process and alleged that Smith violated his right to due process for, among other things, failing to contact Jerry Marble, Blaine Marble, and Brittany Wells, and by not making Dontigny available for questioning at the September 22, 2011 hearing. On February 7, 2012, Marble's Step Three Grievance Appeal was upheld and he was granted a new on-site hearing.

On February 24, 2012, Poole filed a new Report of Violation alleging the same four parole violations as in his September 14, 2011, Report of Violation, along with two additional violations of Parole Condition Number 9, Illegal Drug Use. These violations were based upon lab results from the State Crime Lab on Marble's urine samples evidencing marijuana use by Marble between August 25

and 31, 2011, and between August 31 and September 6, 2011. Poole received the test results for these alleged drug use violations on October 31, 2011.

On February 24, 2012, Marble was served with notice that his second on-site hearing would take place on March 7, 2012. Prior to the hearing, Marble entered a deferred prosecution agreement with the City of Missoula concerning the September 8, 2011, assault and marijuana possession charges. The deferred prosecution agreement was signed by the municipal Court Judge on March 7, 2012 and stated that the City agreed to defer prosecution of the charges for a period of 6-months, during which time Marble agreed to abide by certain conditions, and after which Marble could file a motion to dismiss the charges.

The on-site hearing was held on March 7, 2012 and based upon the testimony and evidence, Hearing Officer Beccari found probable cause on the two marijuana use violations based on the October 31, 2011 Crime Lab test results. She found no probable cause on the remaining violations. Marble was again returned to Montana State Prison to answer to the Montana Board of Pardons and Parole. Smith was neither involved in the scheduling of Marble's March 7, 2012, on-site hearing, nor with the hearing itself.

On April 6, 2012, Marble filed a Petition for Habeas Corpus in the Montana Supreme Court, claiming his parole had been illegally revoked for using marijuana

while possessing a valid medical marijuana registry card. On May 21, 2012, the Department of Corrections conceded that since Marble possessed a valid marijuana registry card, his parole could not be revoked solely for using marijuana. On May 23, 2012, Marble was released from the Connections Corrections Program and returned to the Missoula Intensive Supervision Program.

## II. STATEMENT OF CLAIMS

In his Amended Complaint (Doc. 20), Marble alleges Defendant Poole retaliated against him in violation of the First Amendment when he reported two additional parole violations after Marble successfully filed a grievance. He also alleges that his Fourteenth Amendment due process rights were violated when Defendants failed to make Leann Dontigny available at his preliminary hearing, failed to contact or allow Marble to present witnesses at the preliminary hearing, and failed to afford him a preliminary hearing with witnesses as promptly as convenient after his arrest. (Amended Complaint, Doc. 20 at 6-7.)

## III. MOTION FOR SUMMARY JUDGMENT

### A. Standard

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the

5

initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B. Smith is Entitled to Quasi-Judicial Immunity

Smith asserts she is entitled to absolute immunity with respect to Marble's procedural due process claim because she was performing a quasi-judicial function. "State officials are entitled to some degree of immunity from § 1983 damages actions arising from their official acts." *Swift v. California*, 384 F.3d 1184, 1188 (9th Cir. 2004). The question is whether they are entitled to absolute or qualified immunity. Judges are entitled to absolute immunity for their judicial acts. *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967). Prosecutors are entitled to

absolute immunity for activities "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The test of whether other state officials are entitled to a similar type of absolute immunity is "whether the official is 'performing a duty functionally comparable to one for which officials were rendered immune at common law.'" *Swift*, 384 F.3d at 1190 (*citing Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir. 2003)); *see also Seller v. Procunier*, 641 F.2d 1295, 1302 (9th Cir. 1981)(finding state parole board officials are absolutely immune from suit for actions taken when processing parole applications, since parole board officials perform functionally comparable tasks to judges when they decide to grant, deny or revoke parole.)

In the Ninth Circuit, parole officials "are entitled to absolute quasi-judicial immunity for decisions 'to grant, deny, or revoke parole' because these tasks are 'functionally comparable' to tasks performed by judges." *Swift*, 384 F.3d at 1189. Absolute immunity does not extend to all acts related to the granting or denial of parole, but "an official who adjudicates parole decisions is entitled to quasi-judicial immunity for those decisions, and actions integral to those decisions." *Id.* at 1191.

The Court sees no principled distinction between the revocation of parole by

the parole board and the adjudicatory function of the preliminary hearing determining what probable cause exists to believe a violation occurred. This conclusion is consistent with the Supreme Court's "functional" approach to immunity law which focuses on the nature of the individual official's responsibilities and not on his rank, status, or location within the government. *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985). Parole board members are entitled to absolute immunity from suit by a parolee alleging his due process rights were violated in a revocation proceeding. Likewise, an official such as Defendant Smith who performs the quasi-judicial function of determining preliminarily whether probable cause exists to justify a final revocation hearing enjoys the same immunity. *See Farrish v. Mississippi State Parole Board*, 836 F.2d 969 (5th Cir. 1988) (preliminary hearing officer, who conducted hearing without critical adverse witness, even though parolee requested his presence, overruled parolee's objections to hearsay evidence, and considered adverse witness' hearsay statements in finding existence of probable cause to detain parolee, enjoyed absolute immunity from liability in suit for damages by parolee alleging that revocation procedures violated right to due process); *Thomas v. Scherer*, 51 F.3d 1042 (5th Cir. 1995)(hearing officer at preliminary hearing on parole revocation participated in quasi-judicial activity and was entitled to absolute immunity);

8

*Trotter v. Klincar*, 748 F.2d 1177 (7th Cir. 1984).

Relying upon *Cleavinger v. Saxner*, 474 U.S. 193 (1985), Marble argues Smith is only entitled to qualified immunity. In *Cleavinger*, the Supreme Court expressly distinguished members of a prison disciplinary committee, who received only qualified immunity, from parole board members. Here, Smith was an adjudicatory officer in the preliminary proceedings of a parole revocation. Her responsibility in adjudicating the issue of probable cause is, for purposes of immunity, indistinguishable from a parole board member adjudicating the final revocation determination. Accordingly, Smith too is entitled to absolute immunity. The *Cleavinger* case is distinguishable.

Smith's decision regarding the attendance of witnesses and what evidence may or may not have been considered was all part of her quasi-judicial function. As such, Smith is absolutely immune from liability and her motion for summary judgment should be granted.

### C. Jared Poole's Motion for Summary Judgment

Under the Administrative Rules of Montana, in effect at the time of the September 22, 2011 hearing, Poole was required to contact the requested witnesses and inform them of the time and place of the hearing. (ARM 20.2.209(3), repealed August 10, 2012, Doc. 33-1 at 11.) In this case, however,

9

Smith–in her capacity as the preliminary hearing officer–undertook to make contact with the requested witnesses. And, in that same capacity, Smith decided to proceed with the hearing in the absence of the witnesses requested by Marble. Because Smith is entitled to quasi-judicial immunity, the Court sees no basis to find Poole liable for any alleged due process violation that may have occurred at the September 22, 2011 preliminary hearing.

Marble also alleges that Defendants failed to afford him a preliminary hearing with witnesses as promptly as convenient after his arrest. He alleges he did not receive a fair hearing until March 7, 2012. (Amended Complaint, Doc. 20 at 7.) Marble received a preliminary revocation hearing on September 22, 2011, just two weeks after his arrest. His final revocation hearing was scheduled for November 29, 2011. (BOPP Letter, Doc. 36-2 at 2.) Marble requested a continuance on November 22, 2011 to allow time for his attorney to prepare for the hearing. It was granted and the hearing was reset for December 2011. (Marble Request, Doc. 36-2 at 3.) He requested a second continuance on December 8, 2011 to allow more time to prepare which was granted and his hearing was reset to January 2012. (Marble Request, Doc. 36-2 at 12.) He requested a third continuance on January 6, 2012 to again allow more time to prepare and his case was continued until February 2012. (Marble Request, Doc. 36-2 at 14; Response,

10

Doc. 36-2 at 15.) On February 7, 2012, Marble's counsel requested a continuance due to a scheduling conflict and a fourth continuance was granted. (Stephens Letter, Doc. 36-2 at 18; Response, Doc. 36-2 at 17.) Ultimately, Marble received a new on-site hearing on March 7, 2012.

Although, there was a delay in obtaining his ultimate parole hearing, it appears that delay was due to the continuances requested by Marble. There is no evidence that Defendants denied Marble a timely hearing.

Lastly, Marble alleges Poole retaliated against him by including two additional violations in his February 24, 2012 report of violation because Marble was successful in a grievance regarding his first parole revocation hearing. The First Amendment to the United States Constitution prohibits state actors from retaliating against individuals for engaging in constitutionally protected activities. *Blair v. Bethel School District*, 608 F.3d 540, 543 (9th Cir. 2010).

> To recover under § 1983 for such retaliation, a plaintiff must prove: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

*Blair*, 608 F.3d at 543 (*citing Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006). The alleged adverse action need only be one "that is

reasonably likely to deter" a plaintiff from engaging in constitutionally protected activity. *Blair*, 608 F.3d at 543 n. 1 (citation omitted). A defendant's retaliatory intent to chill a plaintiff's conduct, however, must be the but-for cause of the alleged retaliatory action. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900–901 (9th Cir. 2008).

The Court will assume for purposes of this Order that Marble was engaged in constitutionally protected activity. The First Amendment affords an individual a right "to petition the Government for a redress of grievances." U.S. Const. Amend. I. An individual has a constitutionally protected right of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 n. 12 (2002). Thus, Marble's pursuit of his legal remedies by grieving the procedures utilized in the preliminary parole revocation hearing was protected conduct.

Marble has not established, however, that he was subjected to adverse action by Poole that would chill his protected activity or that there was a substantial causal relationship between Marble's grievances and the addition of the two additional charges.

The violations which were added to the February 24, 2012 report of violation stem from Marble failing two drug tests. The first test was collected on August 25, 2011 and it field tested positive for THCCOOH. (Doc. 25-4 at 9.) The

second test was collected on August 31, 2011 and was not field tested but was sent to a laboratory for testing. (Doc. 25-4 at 12.) The lab results for both of these tests were returned on October 31, 2011 and both indicated that Marble had been using marijuana. (Doc. 25-4 at 10, 13.) Although Poole could arguably have filed an amended report of violation at that time, there is nothing which required him to do so and the mere fact that he added these violations to his February 24, 2012 report does not by itself establish retaliation.

In addition, "When a plaintiff claims prosecution in retaliation for an exercise of a First Amendment right, the plaintiff must plead and prove that the defendant lacked probable cause." *Dietrich v. Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir. 2008) citing *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006). Marble cannot establish that there was a lack of probable cause with regard to the two additional charges. The lab results clearly showed that Marble had been using marijuana in August 2011.

Poole's Motion for Summary Judgment should be granted.

## IV. CONCLUSION

Based upon the foregoing, the Court concludes that the evidence in the record of the case establishes that Defendant Smith is entitled to quasi-judicial immunity and that Defendant Poole did not violate Marble's rights as guaranteed

13

under the Constitution of the United States.

Therefore, IT IS RECOMMENDED that Defendants' Motions for Summary Judgment (Docs. 23, 26) be GRANTED, and this action be DISMISSED.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

Marble may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[2] 28 U.S.C. § 636. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 27th day of February, 2015.

*Jeremiah C. Lynch*
Jeremiah C. Lynch
United States Magistrate

---

[2] As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d). Therefore, three (3) days are added after the period would otherwise expire.