IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CODY WILLIAM MARBLE,<br><br>Plaintiff,<br><br>vs.<br><br>JARED POOLE and HEATHER SMITH,<br><br>Defendants. | CV 13–186–M–DWM–JCL<br><br>ORDER<br><br>**FILED**<br>MAY 1 2 2015<br>Clerk, U.S. District Court<br>District Of Montana<br>Missoula |

**INTRODUCTION**

Plaintiff Cody William Marble brings this action under 42 U.S.C. § 1983 against two parole officers, Jared Poole and Heather Smith, asserting violations of his due process and First Amendment rights under the United States Constitution. Poole and Smith have filed motions for summary judgment. (Docs. 23, 26.) Magistrate Judge Jeremiah Lynch entered Findings and Recommendations on February 27, 2015, recommending that both motions be granted. (Doc. 38.) Marble's timely objections to the findings and recommendations, (Doc. 39), are reviewed de novo, 28 U.S.C. § 636(b)(1).

-1-

## Discussion

Marble makes the following objections: (1) that Smith is not entitled to absolute quasi-judicial immunity; (2) that Poole and Smith cannot escape liability for their alleged failure to adequately notify Marble's witnesses of the time and place of his preliminary on-site hearing; (3) that Poole and Smith are not entitled to qualified immunity for allegedly failing to provide a prompt preliminary hearing; and (4) that Poole is not entitled to qualified immunity on Marble's First Amendment retaliation claim. (Doc. 39.) For the reasons stated below, Marble's first objection is sustained, and his third and fourth objections are overruled. Marble's second objection is sustained to the extent that the issue is referred back to Judge Lynch to prepare further findings and recommendations. Additionally, Defendants' post-deprivation remedy argument is also referred back to Judge Lynch to review in the first instance.

## I. Absolute Quasi-Judicial Immunity

Marble objects to the conclusion that Smith is entitled to absolute quasi-judicial immunity. (Doc. 39 at 1–2.) Judges are entitled to absolute immunity when acting in a judicial capacity. *Meek v. Cnty. of Riverside*, 183 F.3d 962, 965 (9th Cir. 1999) (citing *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991)). Non-judicial officers may be entitled to absolute quasi-judicial immunity for decisions they

make while acting in a quasi-judicial capacity, if their judgments are "'functionally comparable'" to judges in that they "'exercise a discretionary judgment' as part of their function." *Swift v. California*, 384 F.3d 1184, 1188 (9th Cir. 2004) (quoting *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993)). With respect to non-judicial officers, courts apply a presumption in favor of qualified immunity as opposed to absolute immunity. *Burns v. Reed*, 500 U.S. 478, 486–87 (1991). The proponent of a claim to absolute immunity "bears the burden of establishing the justification" for absolute immunity. *Antoine*, 508 U.S. at 432.

In *Antoine*, the United States Supreme Court held that a court reporter's task of providing a verbatim transcript is not entitled to absolute quasi-judicial immunity under the "functional approach" because a court reporter is "afforded no discretion in the carrying out of this duty." *Id.* at 436. The Court reiterated its holding in *Burns* that the "touchstone" for the functional approach is "'performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.'" *Id.* at 435–36 (quoting *Burns*, 500 U.S. at 500).[1] However, the Court in *Antoine* "worked a sea change" in how absolute immunity is analyzed by holding that the proper inquiry is whether an

---

[1] The *Antoine* Court also held that neither "the difficulty of a job" nor whether the task "is extremely important" are factors to be considered in the functional approach. *Antoine*, 508 U.S. at 436.

official is performing a duty "'functionally comparable to one for which officials were rendered immune at common law.'" *Swift*, 384 F.3d at 1190 (quoting *Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir. 2003) (en banc)).

In cases decided prior to the "sea change" in *Antoine*, the Fifth Circuit and the Seventh Circuit both held that preliminary hearing officers are entitled to absolute quasi-judicial immunity. *Farrish v. Miss. State Parole Bd.*, 836 F.2d 969, 975–76 (5th Cir. 1988); *Trotter v. Klincar*, 748 F.2d 1177, 1181–82 (7th Cir. 1984). However, these cases did not analyze, as subsequently required by *Antoine*, whether the function performed by the preliminary hearing officers were functionally comparable to those granted immunity at common law. *Antoine*, 508 U.S. at 432–33.

Since *Antoine*, the Ninth Circuit has held that parole *board members* are entitled to absolute quasi-judicial immunity when they make decisions to "grant, deny, or revoke parole." *Swift*, 384 F.3d at 1189 (citing *Anderson v. Boyd*, 714 F.2d 906, 909–10 (9th Cir. 1983)). And parole *officers* are entitled to absolute quasi-judicial immunity for actions "integrally related to an official's decision to grant or revoke parole." *Id.* (citing *Anderson*, 714 F.2d at 909). However, parole officers' "conduct arising from their duty to supervise parolees" is not entitled to quasi-judicial immunity. *Id.* In analyzing claims of absolute quasi-judicial

immunity, courts have carefully drawn a line between adjudicatory acts on the one hand and administrative acts on the other. Parole officers performing administrative acts are not entitled to absolute quasi-judicial immunity. *Anderson*, 714 F.2d at 910 ("dissemination of information outside . . . the parole board" is an administrative act); *Swift*, 384 F.3d at 1191 (administrative acts include "(1) investigating parole violations, (2) ordering the issuance of a parole hold . . ., and (3) recommending the initiation of parole revocation proceedings.").

Smith is not entitled to absolute quasi-judicial immunity. The key inquiry for the functional approach is whether the specific conduct complained of is adjudicatory in nature. *Antoine*, 508 U.S. at 435–36. Marble does not allege that Smith's adjudicatory role—her probable cause determination—caused him harm. Rather, Marble alleges that his due process rights were violated when Smith and Poole "failed to make Leann Dontigny available" and "failed to contact or allow [him] to present witnesses" at the September 22, 2011 hearing. (Amend. Compl., Doc. 20 at 7.) The act of contacting witnesses is not functionally comparable to an adjudicatory act undertaken by a judge. Instead, contacting witnesses is more similar to "dissemination of information" and "aris[es] from [the] duty to supervise parolees," both of which the Ninth Circuit has held to be administrative acts. *Anderson*, 714 F.2d at 910; *Swift*, 384 F.3d at 1191. Further, Smith bears the

burden of establishing that absolute quasi-judicial immunity applies. *Antoine*, 508 U.S. at 432. Smith has not argued that her act of contacting witnesses is functionally comparable to "the immunity historically accorded the relevant official at common law." *Id.* Consequently, Smith is not entitled to absolute quasi-judicial immunity for the administrative act of attempting to contact witnesses. Marble's objection is sustained.

## II. Qualified Immunity

To determine whether an official is entitled to qualified immunity from civil lawsuits, courts ask two questions. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). Second, was the right "clearly established?" *Id.* If an officer's conduct violates "'clearly established statutory or constitutional rights of which a reasonable person would have known,'" then the officer is not entitled to qualified immunity with respect to that conduct. *Id.* at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

### A. Right to Have Witnesses Present at the Preliminary Hearing

Marble alleges that his right to due process under the Fourteenth Amendment was violated because Smith and Poole failed to adequately notify his

requested witnesses. (Amend. Compl., Doc. 20 at 7.) The Findings and Recommendations did not reach the question of whether Smith and Poole are entitled to qualified immunity for this claim. (Doc. 38 at 9–10.)

### 1. Factual Background

The following facts are viewed in the light most favorable to Marble. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam). On September 14, 2011, Marble was served with a Notice of On-Site Hearing form. (Docs. 33 at 6; 33-1 at 7.) Marble was served with a replacement Notice of On-Site Hearing form on September 16, 2011. (Docs. 33 at 6; 33-1 at 9.) The Notice of On-Site Hearing form states:

> You may bring . . . individuals who can give *relevant* information in your behalf to the hearing officer. Upon your request, persons who have given adverse information on which revocation may be based, will be made available for questioning in your presence, unless the hearing officer determines that the informant would be subjected to risk if his/her identity were disclosed. This is not an adversary hearing; however, in all cases, the attorney and witnesses must be notified by the alleged violator and secured at his/her own expense.

(Docs. 33 at 6; 33-1 at 9 (emphasis in original).)

Marble filled out a Request for Witnesses form twice, once on September 14, 2011, and again on September 16, 2011. (Docs. 33 at 7; 33-1 at 8, 10.) Marble requested three witnesses to provide exculpatory information on his

behalf: Jerry Marble, Blaine Marble, and Brittany Wells. (*Id.*; Doc. 33-1 at 43–49.) Marble also requested two adverse witnesses, Leann Dontigny and Poole. (Docs. 33 at 7; 33-1 at 8, 10.) Marble saw on the report of parole violation dated September 14, 2011, that Police Officer Devin Erickson and Parole Officers Melissa Strecker and Andrea Bethel were already listed as state witnesses for the preliminary on-site hearing, so Marble did not include them on his Request for Witnesses form. (Doc. 33-1 at 6, 51.)

The Request for Witnesses form includes a space for the witness's name and address but not telephone number. (*Id.* at 8, 10.) Each Request for Witnesses form requires the offender to sign and includes the statement "I understand that if I cannot contact [the witnesses], efforts will be made to contact them for me, but that their attendance will be voluntary and at their own expense." (*Id.*) Marble listed addresses and telephone numbers for Jerry Marble and Blaine Marble; Marble only listed addresses for Wells, Dontigny, and Poole. (*Id.*) On the Request for Witnesses form that Marble signed on September 14, 2011, he wrote down the wrong telephone number for Jerry Marble; however, Marble believed that the September 16, 2011 form, which included the correct number, replaced the September 14, 2011 form. (Doc. 33 at 7–8.) While he filled out the Request for Witnesses form on September 16, 2011, Marble remarked to Probation and Parole

Officer Valerie Chestnut that he did not have telephone numbers for Dontigny or Wells. (Doc. 33-1 at 52.) Officer Chestnut replied that it "wouldn't be a problem and an officer would be sent to notify" each of them. (*Id.*)

Prior to the preliminary on-site hearing scheduled for September 22, 2011, Smith attempted to contact Marble's requested witnesses. Smith left a voicemail for Jerry Marble asking him to return her call before 8:30 a.m. on September 22, 2011; however, Smith used the incorrect telephone number from the September 14, 2011 form. (Doc. 33 at 8.) Smith's message for Jerry Marble did not include the time and place of the hearing. (Doc. 33-1 at 43.) Smith located a telephone number for Dontigny and called her on September 21, 2011. (Doc. 33 at 9.) Dontigny answered the telephone, did not say anything, and hung up. (*Id.*) Smith called her back again a couple minutes later, but Dontigny did not answer. (*Id.*) Smith left a voicemail asking Dontigny to return Smith's call by 8:30 a.m. the following day but without informing Dontigny of the time and place of the hearing. (*Id.*) Dontigny never returned the call. (*Id.*) At the September 22, 2011 hearing, according to Marble, Smith stated that Dontigny would not be present because "we don't bring victims to these things." (*Id.*) Smith spoke to Blaine Marble on the phone but did not provide him with the date and time of the hearing. (*Id.* at 9–10; Doc. 33-1 at 45–46.) Instead, Smith took a statement from Blaine

Marble over the telephone regarding the ownership of a small quantity of marijuana that was found in Marble's car after his arrest on September 8, 2011. (*Id.*) Smith did not attempt to contact Brittany Wells, for whom only a mailing address was provided. (Doc. 33 at 10.) Smith stated in her summary of the September 22, 2011 hearing, "There was not a phone number listed to contact Brittany Wells; only an address listed and she never attempted to make contact with me at the office . . . and it was not noted what relevant information Brittany could provide on the behalf of parolee Marble." (Doc. 20-1 at 6.) Smith was informed that Blaine Marble might know a telephone number for Brittany Wells, and she noted that she "couldn't get ahold of Blaine for [the number]." (Doc 33-1 at 42.) However, when Smith was able to reach Blaine Marble on the telephone, she did not ask him for Wells's telephone number. (*Id.* at 42, 45–46.)

At the September 22, 2011 hearing, Smith presided, and only Poole appeared as a witness. (Doc. 33 at 10–12.) During the hearing, Marble twice requested a continuance so he could contact his requested witnesses. (*Id.*; Doc. 33-1 at 53.) Smith denied the continuance each time. (Doc. 33-1 at 53.) Marble stated to Smith that the Notice of On-Site Hearing form instructed him that he had "the right to bring witnesses and question adverse witnesses." (*Id.*) Smith replied to Marble, "Well then you should have notified them." (*Id.*)

### 2. Applicable Law

In the leading case on parole revocation, the Supreme Court held that under the Fourteenth Amendment, parolees are entitled to due process in the revocation of their parole. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Although the State has an "overwhelming interest" in being able to revoke an individual's parole if revocation is warranted, the State "has no interest in revoking parole without some informal procedural guarantees." *Id.* at 483. A parolee's due process right includes at minimum an "informal hearing" to determine probable cause. *Id.* at 484–85. Due process requires the parolee receive notice prior to the preliminary hearing. *Id.* at 486–87. At the preliminary hearing itself, due process requires that the "parolee may appear and speak in his own behalf; [and] he may bring letters, documents, or individuals who can give relevant information to the hearing officer." *Id.* at 487. Further, a person "who has given adverse information . . . is to be made available for questioning in his presence." *Id.*

Under Montana law, and in line with *Morrissey*, a parolee is entitled to a preliminary hearing after arrest for an alleged violation of parole. Mont. Code Ann. § 46–23–1024. The parolee must be allowed to "introduce relevant information to the hearings officer." § 46–23–1024(2). Under a State of Montana administrative regulation (the "Regulation") promulgated by the Department of

Corrections, in effect at the time of the September 22, 2011 hearing, a parolee may request to have witnesses appear at the preliminary hearing by submitting the proper form to the parole officer. Mont. Admin. R. 20.2.209(2) (repealed Aug. 10, 2012). The Regulation states, "If the parolee is being detained pending hearing, the parole officer *shall contact* the requested witnesses *and inform* [them] of the time and place of the hearing." 20.2.209(3) (emphasis added) (repealed Aug. 10, 2012). The State of Montana Probation and Parole Bureau Standard Operating Procedures states, "If the offender is incarcerated, reasonable attempts will be made to contact witnesses on behalf of the offender." (Doc. 33-1 at 17.) Responsibility for this task is placed on the Probation and Parole Officer with supervision over the offender. (*Id.*) This is at odds, however, with the Notice of On-Site Hearing form used by the Department of Corrections,[2] which places responsibility for contacting witnesses on the parolee. It initially states, using language drawn from *Morrissey*, 408 U.S. at 487, that a parolee "may bring letters, documents, or individuals, who can give relevant information in [his] behalf to the hearing officer." (Doc 25-3 at 5.) Departing from the language used in *Morrissey*, the Notice of On-Site Hearing form then states that the witnesses "must be notified

---

[2] The Notice of On-Site Hearing form is referenced in the "Forms" section of Procedure No. P&P 140-2 of the Probation and Parole Bureau Standard Operating Procedures, last revised August 20, 2007.

by the alleged violator and secured at his/her own expense." (*Id.*) There is a direct conflict between the Notice of On-Site Hearing form and the Regulation. To the extent that the Notice of On-Site Hearing form is in direct conflict with the Regulation, the Regulation controls.[3] Accordingly, if the parole officer with supervision over a parolee held in custody fails to contact adverse witnesses and the witnesses requested by the parolee and notify them of the time and place of the hearing, a violation of the parolee's right to a preliminary hearing under *Morrissey* has occurred.

As the Findings and Recommendations did not reach this question of qualified immunity, Marble's objection is sustained to the extent necessary for referral back to Judge Lynch for further findings and recommendations. Judge Lynch should decide in the first instance whether a reasonable jury could find that Marble's due process right to have witnesses appear at his preliminary hearing was violated and whether the right was clearly established.

**B.    Due Process Right to a Prompt Preliminary Hearing**

Marble alleges that his due process right under the Fourteenth Amendment

---

[3] Procedure No. P&P 10-3 of the Probation and Parole Bureau Standard Operating Procedures states, "If a section of any procedure is found to be in conflict with . . . Montana statutes [or] Administrative Rules . . ., that portion of the procedure shall be considered null and void."

was violated because Smith and Poole failed to provide him a prompt preliminary hearing. (Amend. Compl., Doc. 20 at 7.) He objects to the conclusion that they are entitled to qualified immunity on this claim. (Doc. 39 at 3–4.) The Supreme Court stated in *Morrissey* that "due process would seem to require that some minimal inquiry be conducted . . . as promptly as convenient after arrest while information is fresh and sources are available." *Morrissey*, 408 U.S. at 485. An individual's due process rights are only violated "when the Commission's delay in holding a revocation hearing is both unreasonable and prejudicial." *Meador v. Knowles*, 990 F.2d 503, 506 (9th Cir. 1993) (citing *Camacho v. White*, 918 F.2d 74, 79 (9th Cir. 1990)).

Here, there was no unreasonable delay in providing a hearing for Marble because much or all of the delay is attributable to Marble's requests for continuances while he pursued the grievance process. Marble received a preliminary hearing fourteen days after the alleged parole violation occurred. A final revocation hearing was scheduled for November 29, 2011, as a result of the September 22, 2011 hearing. Marble could have chosen to testify and to present his requested witnesses at the November 29, 2011 revocation hearing. Instead, Marble filed four continuances of his final revocation hearing while he pursued the three-step grievance process. The March 7, 2012 preliminary on-site hearing

occurred one month after Marble prevailed at the grievance process. There is no evidence that either the September 22, 2011 hearing (fourteen days after the alleged violation) or the March 7, 2012 preliminary on-site hearing (twenty-eight days after Marble prevailed at the grievance process) caused an unreasonable delay. A reasonable jury would not find that Marble's due process right to a prompt preliminary hearing was violated. Marble's objection is overruled, and Smith and Poole are entitled to qualified immunity on this claim.

### C. Right to Use Grievance Process without Retaliation

Marble alleges that his First Amendment right to use the Department of Corrections grievance process without retaliation was violated because Poole included two additional violations in his February 24, 2012 report of violation after Marble was successful in the grievance process. (Amend. Compl., Doc. 20 at 6.) Marble objects to the conclusion that Poole is entitled to qualified immunity on this claim. (Doc. 39 at 4.) The First Amendment "'forbids government officials from retaliating against individuals for speaking out.'" *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). To prevail, a plaintiff must prove that

> (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected

activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

*Id.* (citing *Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)). Here, the parties do not contest that Marble meets the first two requirements under *Blair*. The third element requires that a plaintiff prove that the official's "'desire to cause the chilling effect was a but-for cause of [the official's] action.'" *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir. 2008) (quoting *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1231–32 (9th Cir. 2006)). The official will prevail if he is able to show that he "would have reached the same decision in the absence of the protected conduct." *Crawford-el v. Britton*, 523 U.S. 574, 593 (1998) (citing *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977)). In relevant cases of retaliatory prosecution, the Supreme Court has held that "absence of probable cause should be an essential element" and that the plaintiff must "plead and prove that the defendant lacked probable cause." *Hartman v. Moore*, 547 U.S. 250, 257, 265–66 (2006). The rationale for this additional element is that "the existence of probable cause will suggest that prosecution would have occurred even without a retaliatory motive." *Id.* at 261.

Marble's sole evidence that goes to the substantial causal relationship element is that Poole filed the additional violations seventeen days after Marble

-16-

had prevailed in the grievance process. Although the delay in filing the violations is suspect, it is insufficient to meet the substantial causal relationship standard in *Blair*. Poole insists the timing of the additional violations was not retaliatory because the evidence that gave rise to the violations—Marble's drug tests from August 2011 that showed evidence of marijuana use—were not available to Poole until October 31, 2011, several weeks after the September 22, 2011 hearing. Poole chose not to file an amended report including the additional violations. Poole stated that he included the additional violations on the February 24, 2012 report because he believed that the Probation and Parole Board "was starting over with the revocation process." (Doc. 27 at 13.) Further, Marble cannot "prove that [Poole] lacked probable cause," *Hartman*, 547 U.S. at 265–66, because the additional violations were supported by urinalyses of two urine samples taken from Marble and examined by the State Crime Lab. (Doc. 27 at 12.)

Marble does not dispute that the test results provided proof that he had used marijuana in August 2011 or that those test results constitute probable cause. Rather, Marble argues that because he possessed a valid medical marijuana registration card, "using the medical marijuana wasn't a violation of Marble's parole conditions." (Doc. 39 at 4.) Marble's argument is factually and legally incorrect. Marble was expressly prohibited from participating in the medical

marijuana program as a term of his parole on July 26, 2011, (Doc. 33 at 3), before either of the urine samples was taken in August 2011. Marble's new medical marijuana registration card did not trump the condition placed upon the terms of his parole. Because the test results that provided evidence of Marble's marijuana use in August 2011 constitute probable cause for Poole's report of additional violations, a reasonable jury would not find that Poole retaliated against Marble for his use of the grievance process. Marble's objection is overruled, and Poole is entitled to qualified immunity on this claim.

### III. Post-Deprivation Remedy

According to Smith and Poole, Marble cannot prevail on his due process claim because he was afforded an adequate post-deprivation remedy in the form of the grievance process. (Doc. 36 at 2.) The Findings and Recommendations did not address this issue. Therefore, the issue is referred back to Judge Lynch to review in the first instance.

Accordingly, IT IS ORDERED that the Findings and Recommendations (Doc. 38) are ADOPTED IN PART as to the conclusions regarding Plaintiff's prompt preliminary hearing and retaliation claims.

IT IS FURTHER ORDERED that Defendants' motions for summary judgment (Docs. 23, 26) are GRANTED IN PART and DENIED IN PART.

Defendant Smith is not entitled to absolute quasi-judicial immunity. Defendants Smith and Poole are entitled to qualified immunity on Plaintiff's prompt preliminary hearing claim. Defendant Poole is entitled to qualified immunity on Plaintiff's retaliation claim.

IT IS FURTHER ORDERED that Defendants' motions for summary judgment (Docs. 23, 26) are REFERRED back to Judge Lynch for further findings and recommendations as to (1) whether Defendants Smith and Poole are entitled to qualified immunity on Plaintiff's witness notification claim; and (2) whether Plaintiff had an adequate post-deprivation remedy.

DATED this 12th day of May, 2015.

Donald W. Molloy, District Judge
United States District Court