THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CODY WILLIAM MARBLE,<br><br>Plaintiff,<br><br>vs.<br><br>JARED POOLE and HEATHER SMITH,<br><br>Defendants. | CV 13-00186-M-DWM-JCL<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

I.  **Introduction**

Plaintiff Cody Marble brings this action under 42 U.S.C. § 1983 against State of Montana parole officers Jared Poole and Heather Smith alleging the officers violated his right to due process with respect to a preliminary parole revocation hearing.[1]  Presiding District Judge Donald W. Molloy has referred the matter to the undersigned to address the following two issues presented by the Defendants' motions for summary judgment: (1) whether Poole and Smith are entitled to qualified immunity on Marble's witness notification claim; and (2)

---

[1] Marble also claimed Poole violated his First Amendment rights by retaliating against him for invoking the grievance process available to challenge the propriety of the preliminary hearing.  Poole has been granted summary judgment on that claim. (Doc. 40, at 19).

whether Marble had an adequate post deprivation remedy, i.e., the grievance process.

For the reasons discussed, it is recommended that Defendant Smith's motion for summary judgment be denied as to Marble's witness notification claim. And because there is no evidence that Defendant Poole violated Marble's due process rights, Poole's motion for summary judgment should be granted.

## II. Background

Because the facts of the case are well known to the parties, only a brief overview of the basic material facts is provided. Additional facts will be detailed as necessary to inform the Court's analysis.

Marble was alleged to have violated the conditions of his parole by assaulting LeAnn Dontigny. At the preliminary revocation hearing – over which Smith presided – the only witness to appear was Poole, who merely recounted the events surrounding the alleged assault based upon hearsay information provided him by other officers. Based solely upon the hearsay testimony of Poole, Smith found probable cause existed to preliminarily revoke Marble's parole.

Prior to the preliminary revocation hearing, Marble, who was incarcerated, had twice filled out a Request for Witness Form asking the probation office to make adverse witness LeAnn Dontigny and exculpatory witnesses Jerry Marble,

Blaine Marble, and Brittney Wells available for questioning at the hearing. Because investigating police officer Devon Erickson and parole officers Melissa Stricker and Andrea Bethel had already been listed as state witnesses, Marble did not include them on the witness request forms. As noted, none of these individuals were present at the revocation hearing and Smith denied Marble's request to continue the hearing so he could contact these potential witnesses.

## III. Discussion

### A. Qualified Immunity

In determining whether an officer is entitled qualified immunity, the court employs a two-part test. First, the court decides whether the officer violated a plaintiff's constitutional right. And if the answer to this first inquiry is "yes," the court proceeds to determine whether the constitutional right was clearly established in light of the specific context of the case at the time of the events in question. *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001), cert. denied 558 U.S. 1110 (2010)). The court has discretion, of course, in deciding which of the two prongs of the qualified immunity analysis it will address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Under the circumstances of this case, the Court first addresses the second prong of the analysis.

In *Morrissey v. Brewer*, 408 U.S. 471 (1972), the Supreme Court made clear that the process due a parolee facing revocation includes "two hearings, one a preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole, and the other a somewhat more comprehensive hearing prior to the making of the final revocation decision." *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82 (1973) (*citing Morrissey*, 408 U.S. 471). As to the preliminary hearing, the parolee is entitled to, among other things, notice of the hearing and its purpose, the opportunity to speak on his own behalf, present witnesses, and, in some cases, question any person who has given adverse information on which the parole revocation is to be based. *Morrissey*, 408 U.S. at 485-87. But "if the hearing officer determines that an informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination." *Morrissey*, 408 U.S. at 487.

Under *Morrissey*, Marble was guaranteed the right to confront adverse witness Dontigny at the preliminary revocation hearing unless good cause existed for not producing her. *See United States v. Comito*, 177 F.3d 1166, 1170 (9th Cir. 1999). "Accordingly, in determining whether the admission of hearsay evidence violates the releasee's right to confrontation in a particular case, the court must

weigh the releasee's interest in his constitutionally guaranteed right to confrontation against the Government's good cause for denying it." *Comito*, 177 F.3d at 1170 (internal citations omitted).

Thus, the determinative issue of whether or not Smith violated Marble's right to confront and cross-examine Dontigny turns on whether or not good cause existed for Smith not producing Dontigny at the preliminary revocation hearing. Because there exists a genuine issue of material fact as to whether the requisite good cause existed, Defendant Smith's motion for summary judgment is appropriately denied.

The record reflects that Smith's attempt to make Dontigny available consisted solely of two phone calls. The first call occurred around 3:00 p.m. on September 21, 2011, the day before the 8:30 a.m. on-site hearing on September 22, 2011. According to Smith, Dontigny hung up on Smith and then refused to answer a second call made shortly thereafter. It is unclear whether Smith ever identified herself to Dontigny or stated the purpose of her call.[2]

Smith argues that good cause existed for her not producing Dontigny based

---

[2]It is important to note that Mont. Code Ann. § 46-23-205(1) provides the Board of Pardons and Parole with the power to "issue subpoenas compelling the attendance of such witnesses and the production of such records, books, papers, and documents as it may deem necessary for investigation of the case of any person before it."

upon her conclusion that Dontigny was afraid to testify, "given Marble had already shown his propensity for violence by threatening her and then punching her in the face." (Smith Affidavit, Doc. 25-6, at 4 ¶ 14). Contrary to Smith's argument, however, there exists a genuine issue of material fact as to whether Dontigny would be subject to a risk of harm by testifying at the preliminary hearing. This is especially true, since unlike the informant referenced in *Morrissey*, Marble knew Dontigny and also knew the request for revocation was based upon her allegations of Marble's assault.

Smith next seeks to convince the Court that Poole's hearsay testimony was sufficiently reliable to establish that Marble did, in fact, assault Dontigny. The Court is unpersuaded.

"The weight to be given the right to confrontation depends on two primary factors: the importance of the hearsay evidence to the Court's ultimate finding and the nature of the facts to be proven by the hearsay evidence." *Comito*, 177 F.3d at 1171. Poole's testimony was undoubtedly critical to Smith's probable cause determination – it was all evidence she had before her. Smith asserts, however, that sufficient indicia of reliability existed because Dontigny made statements to Officer Erickson minutes after the alleged assault and as such, the statements were admissible as present sense impressions under Federal Rule of

Evidence 803(1); as an excited utterance under Rule 803(2), and as a description of her then-existing mental, emotional, and physical condition under Rule 803(3). And Smith points out Dontigny's statements were corroborated both by Officer Erickson's observation of blood on her lip and Marble's admission that there had been some drama. (Doc. 24, at 23-24).

What Defendants miss, however, is that Marble was precluded from challenging, via cross-examination, the veracity of Dontigny's statements to Officer Erickson regarding what actually transpired at the time of the alleged assault. And, for that matter, Marble was also precluded from testing, through cross-examination, the accuracy of Officer Erickson's observations. The ability of Marble to cross-examine Poole was hardly an adequate substitute, as he had no direct knowledge of the incidents underlying the violations. The only evidence presented at the preliminary hearing was Poole's reading of the four alleged parole violations listed in his September 14, 2011 Report of Violations. Marble has sufficiently established the existence of a genuine issue of material fact regarding whether he was denied his due process right to have Dontigny appear at the preliminary revocation hearing. The same is necessarily true with respect to the exculpatory witnesses Marble requested be present.

The record establishes that it was Smith who undertook to contact the

witnesses requested by Marble. And there is no evidence that it was Poole's duty to procure the attendance of those witnesses. Consequently, there exists no basis to find Poole liable for the alleged due process violations which occurred at the September 22, 2011, preliminary revocation hearing. Defendant Poole's motion for summary judgment should be granted.

### B. Post Deprivation Remedy

Defendants contend that Marble's due process claims fail because the grievance procedure provided Marble a constitutionally adequate post deprivation remedy. The Court disagrees. The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. Amend. XIV, § 1. Not all procedural due process claims, however, can proceed in federal court. Specifically, an unauthorized deprivation of liberty or property "by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). "[W]hen deprivations of property [or liberty] are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know

when such deprivations will occur." *Hudson*, 468 U.S. at 533. The rule regarding the adequacy of postdeprivation remedies to redress procedural due process violations applies to deprivations of both liberty and property. *Zinermon v. Burch*, 494 U.S. 113, 131-32 (1990).

The *Hudson* rule does not apply, however, if a state actor's conduct, in committing a deprivation, "is effected pursuant to an established state procedure." Then a postdeprivation state remedy does not satisfy the due process requirement and the claim can proceed in federal court. *Hudson*, 468 U.S. at 534. "[P]ostdeprivation remedies could not save an otherwise unconstitutional act from unconstitutionality in cases in which the state officer acted pursuant to some established procedure." *Zimmerman v. City of Oakland*, 255 F.3d 734, 739 (9th Cir. 2001). Accordingly, if a specific deprivation of liberty is predictable, or if a predeprivation procedure is possible, or if a state actor's deprivation of a liberty interest is authorized, i.e., pursuant to some established procedure, then the rule stated in *Hudson* does not apply, and the conduct is not protected against a due process challenge in federal court. *Zimmerman*, 255 F.3d at 738-39 (citing *Zinermon*, 494 U.S. at 136-138).

In *Zinermon v. Burch*, a patient was admitted to and held at a state mental health treatment facility for five months based upon the "voluntary" admission

forms he signed while heavily medicated, disoriented, and apparently suffering from a psychotic disorder. *Zinermon*, 494 U.S. 113. The patient, Burch, brought a civil rights action against the facility and other defendants for depriving him of liberty without due process of law. The United States Supreme Court declined to apply *Hudson* and held that Burch's allegations that employees at the state mental treatment facility admitted him to the facility as a voluntary patient without taking any steps to ascertain whether he was mentally competent to sign admission forms, were sufficient to state a § 1983 claim, notwithstanding availability of postdeprivation tort remedies. The Court gave three reasons for the holding. First, the Court found that the deprivation of Burch's liberty was not unpredictable because any erroneous deprivation would occur, if at all, at a specific predictable point in the admission process–when a patient is given admission forms to sign. *Zinermon*, 494 U.S. at 136.

Second, the predeprivation process was not impossible because the state had a procedure for involuntary placement. As the Court stated,

> petitioners disregarded their duty to ensure that the proper procedures were followed, not that they, like the prison guard in *Hudson*, were bent upon effecting the substantive deprivation and would have done so despite any and all predeprivation safeguards. Moreover, it would indeed be strange to allow state officials to escape § 1983 liability for failing to provide constitutionally required procedural protections by assuming that those procedures would be futile because the same state

officials would find a way to subvert them.

*Zinermon*, 494 U.S. at 137-138.

Third, the Court found that the petitioners' conduct as not "unauthorized" as the term is used in *Hudson*. "The State delegated to them the power and authority to effect the very deprivation complained of here, Burch's confinement in a mental hospital, and also delegated to them the concomitant duty to initiate the procedural safeguards set up by state law to guard against unlawful confinement." *Zinermon*, 494 U.S. at 138.

In short, the Court in *Zinermon* concluded the *Hudson* doctrine did not apply because the state officially had the authority to deprive individuals of their liberty, the deprivations were, thus, not unpredictable, and it was not impossible for the state to provide predeprivation process. *Id*. at 136-138.

The rationale of *Zinermon* controls here. First, the deprivation of Marble's liberty was not unpredictable. Defendant Smith was going through the process to revoke Marble's parole, therefore any erroneous deprivation would occur, if at all, at a specific predictable point–at the revocation hearings. Second, predeprivation process was not impossible, in fact, Defendant Smith conducted a predeprivation hearing. Third, Smith had the authority to effect the very deprivation of liberty, the revocation of Marble's parole, and she was delegated with the duty to initiate

the procedural safeguards to guard against unlawful confinement. Accordingly, the deprivation of Marble's liberty was not unauthorized.

Here the deprivation of liberty was predictable, a predeprivation procedure was not only possible, it was provided. The fact that Defendant Smith did not conduct the predeprivation hearing properly does not protect her conduct from a due process challenge. Smith was acting pursuant to an established procedure, the *Hudson* rule does not apply, and Smith's conduct is not protected against a due process challenge in federal court.

## III. CONCLUSION

Based upon the foregoing, the Court concludes that there are genuine issues of material fact regarding whether Defendant Smith violated Marble's due process rights at the preliminary parole revocation hearing, and as such, she is not entitled to qualified immunity. Defendant Poole did not violate Marble's rights as guaranteed under the Constitution of the United States.

Therefore, IT IS RECOMMENDED that Defendant Poole's Motion for Summary Judgment (Doc. 26) be GRANTED. Defendant Smith's Motion for Summary Judgment (Doc. 23) with regard to Marble's witness notification claim should be DENIED.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS &
RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

Marble may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[3] 28 U.S.C. § 636. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 16th day of November, 2015.

                                          */s/ Jeremiah C. Lynch*
                                          Jeremiah C. Lynch
                                          United States Magistrate

---

[3]As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d). Therefore, three (3) days are added after the period would otherwise expire.